Second, the Free Enterprise plaintiffs weren't subject to a disciplinary sanction and so could not effectively access the administrative review process. Id. at 490, 130 S.Ct. 3138. As the Supreme Court explained, the Free Enterprise "petitioners object[ed] to the Board's existence, not to any of its auditing standards," meaning their "general challenge to the Board [was] 'collateral' to any Commission orders or rules from which review might be sought. Id. As a consequence, the Court was unable to "see how petitioners could meaningfully pursue their constitutional claims under the Government's theory" of exclusive administrative review. Id. Scottsdale, by contrast, is the subject of a disciplinary sanction and thus has access to the administrative review process. See MTD Ex. A. Finally, the issues raised in Free Enterprise "d[id] not require technical considerations of [agency policy]," prompting the Supreme Court to conclude that they were wholly outside the SEC's expertise. 561 U.S. at 491, 130 S.Ct. 3138 (second alteration in original) (citation omitted). As discussed, Scottsdale's claim functionally challenges several FINRA rules and actions that are within the SEC's expertise.
Scottsdale cites two other cases to support its contention that its claim is not the type intended to be reviewed in the statutory scheme. See Opp'n at 7. Both miss the mark. Scottsdale relies on Kaiser Steel Corp. v. Mullins, a pre- Thunder Basin case, to insist that contract claims arising from regulatory actions are reviewable by a district court. Id. at 7 (citing Kaiser Steel v. Mullins, 455 U.S. 72, 83-84, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982) ). But Kaiser Steel does not reach as far as Scottsdale suggests. The district court there enforced a contract between the United Mine Workers of America and Kaiser Steel. 455 U.S. at 76, 102 S.Ct. 851. In the process, it refused to consider Kaiser Steel's defense that the contract violated the Sherman Act and the National Labor Relations Act. Id. The Supreme Court reversed, concluding "that a federal court has a duty to determine whether a contract violates federal law before enforcing it."
*83 Id. at 83, 102 S.Ct. 851. Unlike this case, Kaiser Steel did not involve a purported contract between a regulatory corporation and a member firm, and the contract claim itself was not grounded in administrative law. Moreover, this is not an instance where the Court is otherwise enforcing a contract and declining to consider a proffered defense due to its relationship to administrative law. Finally, the Kaiser Steel Court concluded that the text of the statute at issue indicated that "a court must reach the merits of an illegality defense in order to determine whether the contract clause at issue has any legal effect in the first place." Id. at 84, 102 S.Ct. 851. These distinctions are fatal to Scottsdale's reliance on Kaiser Steel because that case did not involve any issues that, if adjudicated by the district court, would encroach on the exclusive administrative review mechanism that Congress had established.
Finally, Scottsdale points to City of Providence, Rhode Island v. BATS Global Markets, Inc., to argue that its claim presents an exception to the general rule that suits related to regulatory actions subject to a statutory review scheme cannot be adjudicated by district courts. Opp'n at 7 (citing City of Providence, 878 F.3d at 44-45 ). While City of Providence, unlike the other cases Scottsdale invokes, at least involves an action against regulatory bodies subject to the Exchange Act, it is still inapposite in this context. The plaintiffs in City of Providence filed a securities-fraud class action against seven national securities exchanges. 878 F.3d at 40. The Second Circuit found that the plaintiffs were "challeng[ing] particular actions taken by the defendants individually and not as part of a 'national market system plan' " and therefore the claims were not subject to the Exchange Act's review scheme. Id. at 45. The City of Providence plaintiffs were "not challeng[ing] the SEC's authority or decision to generally approve these products or services as inconsistent with the Exchange Act ... [but] instead ... claim[ing] that ... the exchanges engaged in fraudulent, manipulative conduct." Id. In other words, City of Providence alleged securities fraud by entities that were both regulators and regulated. The Second Circuit specifically noted that the actions at issue dealt with defendants' "actions as a regulated entity-not a regulator ." Id. at 48. Here, by contrast, Scottsdale challenges only actions that FINRA took in its role as a regulator.
At its core, unlike the issues in the cases it cites, Scottsdale's claim "concern[s] (what [it] perceives to be) substantive or procedural deficiencies in [FINRA's] enforcement of the securities laws." Jarkesy, 803 F.3d at 22. Under Thunder Basin, that claim must be reviewed within the statutory scheme provided by the Exchange Act.
This conclusion should come as no surprise to Scottsdale since its prior attempt to skirt the statutory review process met the same fate. Scottsdale attempted to avoid a disciplinary action by claiming several of FINRA's regulatory actions were outside the scope of the Exchange Act, the same claim it makes here. Scottsdale I, 844 F.3d at 417 ; see also Compl. ¶¶ 52-61. The district court rejected that effort, and the Fourth Circuit affirmed. The Circuit put it succinctly:
Congress, through the Exchange Act, intended to channel objections to FINRA's authority through the agency and the courts of appeals. In so doing, it is clear Congress sought to preclude federal district-court jurisdiction. Because Scottsdale can obtain meaningful judicial review of its claim ... following the appeal process outlined in the Exchange Act, ... its challenge to FINRA's authority is the type of claim Congress *84 intended to be reviewed within the statutory scheme.
Scottsdale I, 844 F.3d at 424. The same is true here. Scottsdale's gambit fails again.
IV. Conclusion
For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order shall accompany this memorandum opinion.